UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHARLENE OLIVER,
        Plaintiff,

        v.                                      CIVIL ACTION NO.
                                                12-12186-PBS
BANK OF AMERICA, N.A.,
        Defendant.

REPORT AND RECOMMENDATION RE:
DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
(DOCKET ENTRY # 8)

MEMORANDUM AND ORDER RE:
PLAINTIFF'S MOTION TO AMEND THE COMPLAINT
(DOCKET ENTRY # 11)

June 17, 2013

BOWLER, U.S.M.J.

        Pending before this court is a motion to dismiss for
failure to state a claim (Docket Entry # 8) filed by defendant
Bank of America, N.A. ("defendant") under Rule 12(b)(6), Fed. R.
Civ. P. ("Rule 12(b)(6)").  Also pending before this court is a
motion for leave to amend the complaint (Docket Entry # 11)
filed by plaintiff Charlene Oliver ("plaintiff") under Rule
15(a)(2), Fed. R. Civ. P. ("Rule 15(a)(2)").[1]

PROCEDURAL BACKGROUND

---

[1]  A magistrate judge has "the authority to decide the motion to
amend outright" under 28 U.S.C. § 636(b)(1)(A).  Maurice v.
State Farm Mutual Automobile Insurance Co., 235 F.3d 7, 9 n.2
(1st Cir. 2000) (referring to motion for leave to file amended
complaint to add new count).

The parties' dispute arises from the purchase of property at 17 Heritage Road in Rehoboth, Massachusetts ("the premises") by plaintiff.  Plaintiff filed the original complaint pro se on October 23, 2012.  It sets out a single count alleging unfair or deceptive practices in violation of section two of Massachusetts General Law chapter 93A ("chapter 93A").  (Docket Entry # 3-1). The count alleges that:  (1) "[b]y signing off on a mortgage following the [d]efendant's inspection of the premises;" (2) "failing to conduct a proper inquiry into" the "tactics" of the builder of the premises, John P. DuVally, ("DuVally"); and (3) "failing to honor its promise to forgive [p]laintiff's mortgage, the defendant engaged in unfair and/or deceptive acts" in violation of chapter 93A.  (Docket Entry # 3-1, ¶ 19).

On December 3, 2012, defendant filed the motion to dismiss. (Docket Entry # 8).  Defendant argues that plaintiff's failure to provide it with the statutorily required demand letter at least 30 days prior to filing the chapter 93A claim requires dismissal of the complaint.  Defendant also argues that the claim is:  barred by the statute of limitations; the economic loss doctrine; and/or a failure to articulate an act or practice in violation of chapter 93A.

In response, plaintiff filed the motion for leave to amend the complaint to include the required demand letter.  Defendant opposes the motion to amend due to futility.  Defendant argues

that even if the complaint is amended, the additional arguments
in the motion to dismiss render the amended complaint futile.

STANDARD OF REVIEW

A.  <u>Motion to Dismiss</u>

When considering a motion to dismiss pursuant to Rule
12(b)(6), a court "accept[s] as true all well pleaded facts in
the complaint and draw[s] all reasonable inferences in favor of
the plaintiffs." <u>Gargano v. Liberty International Underwriters,
Inc.</u>, 572 F.3d 45, 48 (1st Cir. 2009).  "The general rules of
pleading require 'a short and plain statement of the claim
showing that the pleader is entitled to relief.'"  <u>Id.</u>  "This
short and plain statement need only 'give the defendant fair
notice of what the . . . claim is and the grounds upon which it
rests.'"  <u>Id.</u>

"To survive a motion to dismiss, the complaint must allege
'a plausible entitlement to relief.'"  <u>Fitzgerald v. Harris</u>, 549
F.3d 46, 52 (1st Cir. 2008).  While "detailed factual
allegations" are not required, "a plaintiff's obligation to
provide the 'grounds' of his 'entitlement for relief' requires
more than labels and conclusions, and a formulaic recitation of
the elements of a cause of action will not do."  <u>Bell Atlantic
v. Twombly</u>, 550 U.S. 554, 555 (2007); <u>Maldonado v. Fontanes</u>, 563
F.3d 263, 266 (1st Cir. 2009); <u>Thomas v. Rhode Island</u>, 542 F.3d
944, 948 (1st Cir. 2008).  Additionally, "a well-pleaded

complaint may succeed even if . . . actual proof of those facts
are improbable." Bell Atlantic v. Twombly, 550 U.S. at 556.

B.  Motion to Amend

It is well settled that futility constitutes an adequate
basis to deny amendment.  See Universal Communication Systems,
Inc. v. Lycos, Inc., 478 F.3d 413, 418 (1st Cir. 2007); Maine
State Building and Construction Trade Council, AFL CIO v. United
States Department of Labor, 359 F.3d 14, 19 (1st Cir. 2004).  "An
amendment is futile if it could not withstand a Rule 12(b)(6)
motion to dismiss." Menard v. CSX Transportation, Inc., 840
F.Supp.2d 421, 427 (D.Mass. 2012).

FACTUAL BACKGROUND[2]

In July 2007, plaintiff surveyed the premises "with the
inspector of [d]efendant." (Docket Entry # 3-1, ¶ 3).  Upon
entering the basement of the premises, plaintiff directed the
inspector's attention to cracks in the basement floor.  (Docket
Entry # 3-1, ¶ 3).  The inspector informed plaintiff that the
cracks were settlement cracks and were of no concern.  (Docket
Entry # 3-1, ¶ 3).  On July 23, 2007, the inspector issued a
certificate of occupancy for the premises.  (Docket Entry # 3-1,
¶ 4).  Defendant "sign[ed] off on a mortgage following the
defendant's inspection of the premises." (Docket Entry # 3-1, ¶

---

[2]  The factual background is taken from the original complaint
(Docket Entry # 3-1).

19).  On July 24, 2007, plaintiff purchased the premises. (Docket Entry # 3-1, ¶ 5).

"Plaintiff moved into the premises [in] October 2007.  When the [p]laintiff re-entered the basement the cracks had grown progressively bigger."  (Docket Entry # 3-1, ¶ 6).  Upon seeing the cracks had grown, plaintiff notified both defendant and DuVally.  (Docket Entry # 3-1, ¶ 6).  Defendant told plaintiff it was unable to help her, but plaintiff continued "to request assistance."  (Docket Entry # 3-1, ¶ 6).  Plaintiff sent correspondence "to request assistance from the defendant all through December, but no action was taken."  (Docket Entry # 3-1, ¶ 6).  From "October 2007 through March of 2009 [p]laintiff continuously sent correspondence to the [d]efendant in regards to the cracks due to the settlement of the premises."  (Docket Entry # 3-1, ¶ 8).

In March 2009, "[d]efendant called [p]laintiff . . . stating it would forgive [the] loan."  (Docket Entry # 3-1, ¶ 10).  Defendant also stated it would "put together" the paperwork to forgive the mortgage loan and send an insurance adjuster to assess the damage.  (Docket Entry # 3-1, ¶ 10).  "[P]laintiff continued to call [d]efendant" when neither the paperwork nor the adjuster arrived at the premises.  (Docket Entry # 3-1, ¶ 10).  Plaintiff also continued to make monthly mortgage payments.  (Docket Entry # 3-1, ¶ 10).

Because defendant's adjuster never arrived at the premises, on or about July 1, 2010, plaintiff received preliminary quotes for repairs from multiple contractors. (Docket Entry # 3-1, ¶ 13). The completed repairs cost $180,000. (Docket Entry # 3-1, ¶ 13). Plaintiff used her homeowner's insurance to assess and repair the premises. (Docket Entry # 3-1, ¶ 13).

In or around January 2012, defendant told plaintiff it would "not accept the mortgage and cited an error in the system before returning the payment due to insufficient payment." (Docket Entry # 3-1, ¶ 14). "This continued through May of 2012." (Docket Entry # 3-1, ¶ 14). Plaintiff's attempts to be relieved from the mortgage obligation by alternative means were unsuccessful.[3]

During the course of communications between plaintiff and defendant, plaintiff notified the Massachusetts Board of Building Regulations and Standards ("the board") of misconduct on the part of the builder, DuVally. (Docket Entry # 3-1, ¶ 7). Plaintiff brought "a case" against DuVally which resulted in the board issuing findings against DuVally and suspending his

---

[3] "Defendant provided [p]laintiff with multiple customer relation representatives and eventually brought the issue to the [Chief Executive Officer]'s office to resolve mortgage concerns, but with no success." (Docket Entry # 3-1, ¶ 15). Plaintiff could not refinance, use the Fannie Mae Mortgage Relief program, or use government programs because the value of the house had depreciated and defendant had placed Private Mortgage Insurance on the mortgage for the premises. (Docket Entry # 3-1, ¶ 15).

building license on February 11, 2010.  (Docket Entry # 3-1, ¶

11).  For every piece of property DuVally has "dealt with,"

defendant has "provided regular financing."  (Docket Entry # 3-

1, ¶ 12).

DISCUSSION

The motion to dismiss centers on plaintiff's failure to

present a written demand for relief 30 days prior to filing an

action under section nine of chapter 93A.  Mass. Gen. L. ch.

93A, § 9(3).  "The statutory notice requirement is not merely a

procedural nicety, but, rather a 'prerequisite to suit.'

Furthermore, 'as a special element' . . . it must be alleged in

the plaintiff's complaint."  Rodi v. S. New England Sch. of Law,

389 F.3d 5, 19 (1st Cir. 2004).  As previously indicated,

defendant also argues that the chapter 93A claim is barred

because:  (1) the statute of limitations expired on two of the

essential aspects of the chapter 93A claim; and (2) either or

both the economic loss doctrine and the failure to articulate an

act or practice that violates chapter 93A precludes relief.

A.   Statute of Limitations

Defendant argues that the statute of limitations bars two

of the three aforementioned aspects of the chapter 93A claim, to

wit, that:  (1) defendant "sign[ed] off" on a mortgage in June

2007; and (2) defendant failed to inquire into the builder's

business practices prior to issuing the certificate of occupancy on July 23, 2007.  (Docket Entry # 3-1, ¶¶ 4 & 19).

"Actions arising on account of violations of . . . chapter 93A . . . shall be commenced only within four years next after the cause of action accrues."  Mass. Gen. L. ch. 260, § 5A.  The date of accrual "is established by the same principles that govern the determination of the underlying action.  A cause of action for deceit in the sale of real estate accrues when the buyer learns or reasonably should have learned of misrepresentation."  Kozikowski v. Toll Bros., Inc., 246 F.Supp.2d 93, 99 (D.Mass.), aff'd on other grounds, 354 F.3d 16 (1st Cir. 2003).

Plaintiff argues that the statute of limitations does not bar these two aspects of the chapter 93A claim.  Plaintiff relies on the discovery rule to avoid the limitations bar.  "The Massachusetts common law discovery rule provides that the statute of limitations is tolled until a plaintiff knows, or reasonably should have known, that it has been harmed or may have been harmed by the defendant's conduct."  Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 238 (1st Cir. 2005) (internal quotation marks omitted); accord Creative Playthings Franchising, Corp. v. Reiser, 978 N.E.2d 765, 770 (Mass. 2012); see Franklin v. Albert, 411 N.E.2d 458, 459-60 (Mass. 1980) ("a cause of action . . . does not accrue

until [the plaintiff] learns or reasonably should have learned that he has been harmed as a result of a defendant's conduct"); see also Friedman v. Jablonski, 358 N.E.2d 994, 997 (Mass. 1976); Hendricksen v. Sears, 310 N.E.2d 131, 136 (Mass. 1974). The discovery rule "may arise in three circumstances:  where a misrepresentation concerns a fact that was 'inherently unknowable' to the injured party, where a wrongdoer breached some duty of disclosure, or where the wrongdoer concealed the existence of a cause of action through some affirmative act done with the intent to deceive." Albrecht v. Clifford, 767 N.E.2d 42, 49 (Mass. 2002); accord Creative, 978 N.E.2d at 770.  As to inherently unknowable injury and absent actual knowledge, "[t]he factual basis for a cause of action is inherently unknowable if it is incapable of detection by the wronged party through the exercise of reasonable diligence." Geo. Knight & Co., Inc. v. Watson Wyatt & Co., 170 F.3d 210, 213 (1st Cir. 1999) (internal quotation marks omitted).  "In order for a cause of action to accrue under the discovery rule, it is only necessary that the plaintiff know about the injury and know that the injury was caused by the defendant." Cigna Insurance Co. v. Oy Saunate. Limited, 241 F.3d 1, 10 n.6 (1st Cir. 2001).

Here, the discovery rule does not relieve plaintiff of the responsibility to bring the complaint before the four year limitations period expired.  Cf. Kozikowski, 246 F.Supp.2d at

99, with Franklin 411 N.E.2d at 459-60.  Plaintiff learned of
the injury and noticed the increased growth of the cracks in the
basement floor in October 2007.  The growth of the cracks and
the misrepresentation of signing off on the mortgage after the
inspection revealed the cracks were not "inherently unknowable."
See Creative 978 N.E.2d at 769.  Similarly, plaintiff learned or
reasonably should have learned about the breach of any duty of
disclosure relative to signing off on the mortgage or any
failure to investigate the builder and his tactics in the fall
of 2007.  See generally id.  Plaintiff therefore learned or,
given the growth of the cracks and defendant's inspection and
issuance of the certificate of occupancy, reasonably should have
learned she was harmed by defendant's conduct in the fall of
2007 with respect to signing off on the mortgage and the
builder's tactics.  In fact, plaintiff immediately contacted
defendant "to request assistance" upon seeing the growth in the
cracks.  Plaintiff thereby identified defendant as the party
responsible for the injury and she asked defendant's assistance
to repair the damage to the premises.  She therefore knew or
reasonably should have known that her injury was caused by
defendant both with regard to signing off on the mortgage and
not investigating the builder.  Plaintiff did not file the
chapter 93A claim against defendant until approximately five

years later on October 23, 2012.  The statute of limitations
therefore bars these two aspects of the chapter 93A claim.

1.  Equitable Estoppel

As a means to avoid the statute of limitations on these two
aspects or allegations, plaintiff alludes to the doctrine of
equitable estoppel  Equitable estoppel allows a claim after the
statute of limitations has run "to escape the consequence of
[plaintiff's] lack of diligence in bringing" the claim.  Trans-
Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 325
(1st Cir. 2008).  If applicable, equitable estoppel would allow
the two aforementioned aspects of the chapter 93A claim to avoid
the limitations bar.

"Where it appears from the dates and facts recounted in the
complaint that the statute of limitations has run, the plaintiff
has an affirmative burden to plead in its complaint the facts
required to establish estoppel."  Trans-Spec Truck Serv., Inc.,
524 F.3d at 325-26.  "To establish estoppel, a party must show
'(1) a representation intended to induce reliance on the part of
a person to whom the representation is made; (2) an act or
omission by that person in reasonable reliance on the
representation; and (3) detriment as a consequence of the act or
omission.'"  Reading Co-Op Bank v. Suffolk Constr. Co., Inc.,
984 N.E.2d 776, 786 (Mass. 2013) (quoting Bongaards v. Millen,
793 N.E.2d 335, 339 (Mass. 2003)); see Turnpike Motors, Inc. v.

Newbury Grp, Inc., 596 N.E.2d 989, 991 (Mass. 1992); see also
O'Blenes v. Zoning Bd. of Appeals of Lynn, 492 N.E.2d 354, 356
(Mass. 1986) (for estoppel to apply "it must appear that one has
been induced by the conduct of another to do something different
from what otherwise would have been done and which has resulted
to his harm and that the other knew or had reasonable cause to
know that such consequence might follow"); White v. Peabody
Const. Co., Inc., 434 N.E.2d 1015, 1023 (Mass. 1982) ("estoppel
would require proof that the defendants made representations
they knew or should have known would induce the plaintiffs to
put off bringing a suit and that the plaintiffs did in fact
delay in reliance on the representations").

    Plaintiff satisfies the first requirement but fails to
satisfy the second requirement.  The allegation that in March
2009 defendant told plaintiff it would forgive the mortgage
obligation may be construed as a representation intended to
induce reliance.  Plaintiff did not bring the chapter 93A claim
based on the defendant "signing off' on the mortgage and failure
to investigate the builder's "tactics" within the time provided
by the statute of limitations in reliance on the promise that
defendant would forgive the mortgage without legal action.

    Plaintiff fails however to allege that reliance on the
representation was reasonable.  Plaintiff contacted defendant in
October 2007.  Defendant told plaintiff that it could not assist

her.  Cf. LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507,

510 (1st Cir. 1998) (defendant told plaintiff it intended to stop

paying benefits; defendant acted on that stated intention; and

defendant's action should have galvanized a reasonable person

into action).  Plaintiff was not contacted by defendant again

until the alleged telephone call in March 2009.  Along with the

promise to forgive the mortgage, defendant also allegedly

promised to send the necessary paperwork and an insurance

adjuster to the premises in order to evaluate the damage to the

premises.  Neither the paperwork nor the adjuster ever arrived.

Plaintiff fails to allege receiving any other communications

from defendant to her until January 2012.  Under the

circumstances, including defendant's evasiveness and

unresponsive conduct in the face of plaintiff's repeated

requests over a long period of time, plaintiff's reliance was

not reasonable and does not withstand the motion to dismiss Rule

12(b)(6) standard of review.  See Kozikowski, 246 F.Supp.2d 93

(failure to file suit within statute of limitations cannot be

viewed as reasonable given defendant's "consistent vacillation

between tepid responsiveness and extreme non-responsiveness").

Accordingly, equitable estoppel does not apply to the two

allegations barred by the statute of limitations.  Although the

chapter 93A claim based on the promise to forgive the mortgage

in March 2009 is timely, plaintiff's reliance on the promise was

not reasonable.  Hence, plaintiff's use of the March 2009
promise to equitably estop the running of the four year
limitations period for the other two chapter 93A allegations,
i.e., "signing off" on the mortgage and failing to investigate
DuVally's "tactics," fails.  The breach of the March 2009
agreement is therefore the sole remaining alleged chapter 93A
violation.  In order to survive the motion to dismiss, plaintiff
must allege a chapter 93A violation based on defendant's failure
to comply with the promise to forgive the mortgage.

B.   Economic Loss Doctrine

     Defendant maintains that the economic loss doctrine
precludes recovery under chapter 93A.  Economic loss is defined
as "damages for inadequate value, costs of repair and
replacement of the defective product or consequent loss of
profits without any claim of personal injury or damage to other
property."  Sebago, Inc. v Beazer E., Inc., 18 F.Supp.2d 70, 89
(D.Mass. 1998).  The economic loss doctrine states "that purely
economic losses are unrecoverable in tort and strict liability
actions in the absence of personal injury or property damage."
Passatempo v. McMenimen, 960 N.E.2d. 275, 294 (Mass. 2012).

Although the economic loss doctrine precludes recovery of
of purely economic losses in tort and strict liability actions,
economic losses are recoverable under chapter 93A:[4]

> To warrant an award of damage under chapter 93A, there
> must be a causal connection between the seller's
> deceptive act and the buyer's injury or loss.  "If any
> person invades a consumer's legally protected
> interests, and if that invasion causes the consumer a
> loss- whether that loss be economic or noneconomic-
> the consumer is entitled to redress under our consumer
> protection statute."

Casavant v. Norwegian Cruise Line Ltd., 952 N.E.2d 908, 912
(Mass. 2011).  The economic loss doctrine therefore does not bar
plaintiff's complaint, but the lack of causation is fatal to the
claim.

C.   Failure to Articulate Chapter 93A Violation

Plaintiff alleges that by breaching the agreement to
forgive the mortgage defendant engaged in an unfair or deceptive
act in violation of chapter 93A.  Substantive liability under
chapter 93A "requires a showing of conduct that (1) falls within
the penumbra of some common-law, statutory, or other established
concept of unfairness; (2) is immoral, unethical, oppressive, or
unscrupulous; and (3) causes substantial injury to consumers or
other business persons."  Jasty v. Wright Medical Technology,

---

[4]  Plaintiff argues for an exception to the economic loss
doctrine.  See Fireman's Fund Ins. Co. v. SEC Donohue, Inc., 176
Ill. 2d 160 (Ill. 1997).  The court's decision is a persuasive
authority, but it is not binding in Massachusetts state court or
in the district of Massachusetts in federal court.

<u>Inc.</u>, 528 F.3d 28, 37 (1st Cir. 2008) (internal quotation marks,
brackets, and citations omitted); <u>accord</u> <u>Rodi</u> 532 F.3d at 19.
Here, defendant's conduct was not threatening, oppressive or
coercive or otherwise unethical or unscrupulous.  <u>See</u> <u>generally</u>
<u>Abraham v. American Mortgage Servicing, Inc.</u>, 2012 WL 4482236,
at *4 (D.Mass. Sept. 27, 2012) ("[b]ecause Deutsche Bank was
entitled to foreclose on Abraham's home, its conduct cannot
subject it to liability under Chapter 93A").  A mere breach of
contract also fails to rise to the level of a chapter 93A
violation:

> A simple, or even intentional, breach of contract is
> insufficient in itself to constitute an "unfair or
> deceptive trade practice" under chapter 93A.  Rather,
> the breach must be knowing and intended to secure un-
> bargained for benefits to the detriment of the other
> party.  The breaching party's conduct must exceed the
> level of mere self-interest, rising instead to the
> level of commercial extortion or similar degree of
> culpable conduct.

<u>City of Revere v. Boston/Logan Airport Associates, LLC</u>, 416
F.Supp.2d 200, 208-09 (D.Mass. 2005).

Here, the remaining claim is that defendant made a promise
to forgive the mortgage.  Plaintiff however fails to allege that
defendant intended to secure benefits not bargained for at the
expense of plaintiff by making the promise.  A good faith
dispute regarding whether to honor a promise and forgive the
mortgage fails to rise to a chapter 93A violation.  <u>See</u>
<u>Duclersaint v. Federal National Mortgage Association</u>, 696 N.E.2d

536, 540 (Mass. 1998) (noting that "a good faith dispute as to whether money is owed, or performance of some kind is due, is not the stuff of which a c. 93A claim is made").  The plaintiff's claim fails to articulate an act or practice in violation of chapter 93A.

Turning to the motion to amend, the chapter 93A claim does not survive the Rule 12(b)(6) standard or review.  Hence, even adding the allegations regarding the demand letter does not salvage the claim.  Because it is futile, the amendment is not warranted.

<u>CONCLUSION</u>

In accordance with the foregoing discussion, this court RECOMMENDS[5] that the motion to dismiss (Docket Entry # 8) be ALLOWED.  The motion to amend the complaint (Docket Entry # 11) is DENIED.

/s/ Marianne B. Bowler
MARIANNE B. BOWLER
United States Magistrate Judge

---

[5]  Any objection to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of the Report and Recommendation to which the objection is made and the basis for such objection.  <u>See</u> Rule 72(b), Fed. R. Civ. P. Any party may respond to another party's objections within 14 days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.